UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CALVIN HENDERSON                          CIVIL ACTION NO. 08-cv-0769

VERSUS                                    JUDGE WALTER

WARDEN, LOUISIANA STATE                   MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

Calvin Henderson ("Petitioner") was indicted in Caddo Parish for second degree murder in connection with the shooting of Charles Williams. The trial was in the second day of jury selection when Petitioner decided to accept the State's plea offer of manslaughter with an agreed sentence of 40 years. No direct appeal was filed, but Petitioner did later file two post-conviction applications. He now seeks federal habeas corpus relief on the grounds that (1) his guilty plea was not voluntarily and intelligently entered, (2) his constitutional rights were violated when the trial court did not advise him of his right to appeal, and (3) his constitutional rights were violated when the state district court did not afford him an evidentiary hearing on his ineffective assistance of counsel claim.

The State argues that the federal petition is untimely, and both parties have offered competing calculations of when tolling was and was not in effect. The undersigned is persuaded that the petition is timely by about five days. The State has also briefed the merits and, for the reasons that follow, it is recommended that the petition be denied on the merits.

**Relevant Facts**

Judge Jeanette Garrett announced on the second day of jury selection that the case had been resolved by a plea agreement.  Petitioner was sworn and asked preliminary questions as part of the entry of his plea.  The following relevant discussions then took place:

THE COURT:  All right.  Have you had an opportunity to fully review your case with your attorney, Ms. Harried?

MR. HENDERSON:  Yes, ma'am.

THE COURT:  All right.  Are you satisfied with the work and the advice that Ms. Harried has provided on your behalf in this case?

MR. HENDERSON:  No, ma'am.

THE COURT:  Well, why are you saying that?

MR. HENDERSON:  Because I'm forced to take this here.

THE COURT:  You're not forced to do anything.  We can bring the jury back in and we can resume with the trial.  I'm not going to accept a guilty plea unless it's freely and voluntarily made and knowingly and intelligently.  We've got the jury here.  We can proceed to try this case, Mr. Henderson, if that's what you want to do.

MR. HENDERSON:  I can't do it.  I ain't trying to hurt that boy.  I can't do it.

THE COURT:  All right.  Then let's proceed with the trial.  That's what we're all here for.  Let's proceed with the trial.

\*\*\*

MS. HARRIED:  Your Honor, before - - Mr. Blewer, before you leave, I would like to say that this is against the advice of counsel.

THE COURT:  The withdraw of the guilty plea?

MS. HARRIED:  Yes, ma'am.

THE COURT:  All right.  Ms. Harried, would you approach the bench.

(Discussion at the bench.)

THE COURT:  The Court notes that some of Mr. Henderson's family is here in the courtroom, and we're going to take a brief recess, and we're going to allow Ms. Harried an opportunity to visit with Mr. Henderson's family members and Mr. Henderson.

***

(Recess taken.)

MS. HARRIED:  Thank you, Your Honor.  I've had an opportunity to visit with Mr. Henderson, and he's had an opportunity to visit with his family.  We have again discussed the plea offer, and he does tell me that he wishes to plead guilty responsively to manslaughter with the understanding that the sentence will be 40 years.

THE COURT:  All right.  Let's let the record reflect that the defendant, Mr. Calvin Henderson, is in court with his attorney.  We're going to have the clerk swear the defendant in again, please.

***

THE COURT:  I'm going to note for the record that your family is here in the courtroom with you, and you're also in the courtroom with your attorney, Ms. Harried.  Now, have you had adequate time to confer about this case with your family and your attorney?

MR. HENDERSON:  Yes, ma'am.

THE COURT:  All right.  And it's my understanding that you want to enter a plea of guilty to the responsive charge of manslaughter, and you're going to receive an agreed upon sentence of 40 years at hard labor; is that correct, Mr. Henderson?

MR. HENDERSON:  Yes, ma'am.

THE COURT:  All right.  Now, are you satisfied with the work and the advice that your attorney, Ms. Harried, has provided on your behalf in this case?

MR. HENDERSON:  Yes, ma'am.

***

THE COURT:  Okay.  And do you understand that our law provides whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years?  So do you understand what your exposure is under the manslaughter statute?

MR. HENDERSON:  Yes, ma'am.

THE COURT:  And do you understand that there's been an agreed upon sentence in this case that I'm going to sentence you to 40 years at hard labor, pursuant to this guilty plea for manslaughter, and you will be given credit for the time that you've been serving in jail since you've been arrested on these charges; do you understand that?

MR. HENDERSON:  Yes, ma'am.

***

THE COURT:  Okay.  Do you understand that you cannot appeal or seek review of the sentence that has been imposed as part of a plea bargain agreement and sentence, which is an agreed upon sentence?

MR. HENDERSON:  Yes, ma'am.

***

THE COURT:  All right.  Other than what we've talked about here in court today, has anybody made any promises or statements to you?

MR. HENDERSON:  Say that again.

THE COURT:  Other than what we've talked about here in court today, has anyone made any promises or statements to you?

MR. HENDERSON:  No, ma'am.

THE COURT:  All right.  The Court finds that there's a factual basis for the plea of guilty.  The Court finds that the defendant's plea is freely and

voluntarily made without anyone having forced other [sic] coerced him to do so.  The Court finds that the defendant understands the nature of the charge of manslaughter and the plea of guilty is accepted.

Pursuant to the plea agreement and the agreed upon sentence in this case, the Court sentences the defendant, Mr. Henderson, to 40 years at hard labor.

\*\*\*

MR. BLEWER:  Your Honor, in connection with the plea, there will be no multiple offender filing and any associated charges in connection with the arrest are not being moved upon.

**Voluntary Guilty Plea**

Petitioner argued in his second post-conviction application that his guilty plea is invalid because neither defense counsel nor the trial judge informed him of the minimum penalty for manslaughter, leaving Petitioner with the impression that the 40-year sentence was the only sentence he could have received.  Petitioner contended that had he known he might have received a lesser sentence if convicted of manslaughter, he would not have pleaded guilty to a 40-year agreed sentence.  Petitioner also argued that his attorney caused him to believe that he would be eligible for parole after serving 7 to 12 years, but the law actually required Petitioner to serve 85% of his sentence before he was eligible.

Petitioner attached to his post-conviction application affidavits from his mother and sister.  Each testified that, during the recess at which the plea was discussed, attorney Harried told Petitioner that if he pleaded guilty he would not have to serve the entire 40 years because he would be "up for parole" within 7 to 12 years.  Both women also testify that Ms. Harried

stated that she was not ready to go to trial so the plea was in Petitioner's best interest.  Tr. 224-25.

The State filed a response with an affidavit from attorney Harried attached.  She testified that she told Petitioner that if he were found guilty as charged of second degree murder the sentence would be mandatory life without benefit of parole, probation, or suspension of sentence.  She explained that if the jury found him guilty of manslaughter, he could be multi-billed as a habitual offender and face a sentence of between 20 and 80 years, and he would likely serve every day of that sentence.  If he pleaded guilty to manslaughter and an agreed 40-year sentence, she advised, he would probably serve 85% of his sentence and become eligible for parole.  Ms. Harried testified that Petitioner responded that he might be "flat timed" because he had a prior conviction for aggravated battery, which is a crime of violence, and Harried agreed that was a possibility.  Ms. Harried testified that she did not tell Petitioner that 40 years was the only possible sentence for manslaughter.  She did tell him that the State's offer was manslaughter and 40 years.  Tr. 297.  The State's response also includes a longer but unsigned affidavit that the State referred to in its brief.  Tr. 287.  There is no evidence it was ever executed by Ms. Harried.

Judge Crichton ruled on the post-conviction application and found that "nothing in the record" supports the claim that Petitioner was told he would be eligible for parole after 7 to 12 years. The affidavits offered by Petitioner were not mentioned.   The court did reference the transcript of the guilty plea and discussed the contents of the unsigned affidavit (which discussed defendant's plea offers to manslaughter and less than the maximum sentence,

rejected by the State).  The court concluded that it was clear from the record and Ms. Harried's affidavit that Petitioner knew "the possible sentences for manslaughter, what the agreed-upon sentence would be, and how much of that sentence he would have to serve." Tr. 298-300. The state appellate court wrote that the "record supports the trial court's denial of the applicant's post-conviction relief claims."  Tr. 309.  The Supreme Court of Louisiana denied writs without comment.  Tr. 390.

Where a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York, 92 S.Ct. 495 (1971).  The Court has also acknowledged that commitments or promises by defense counsel may render a plea involuntary.  Brady v. U.S., 90 S.Ct. 1463, 1472 (1970).  The Fifth Circuit has, based on these precedents, held that when a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such a promise is fulfillable, breach of that promise taints the voluntariness of his plea.  Montoya v. Johnson, 226 F.3d 399, 405 (5th Cir. 2000).

Petitioner attacks the state courts findings in connection with the rejection of this claim. He argues that the state court apparently overlooked the affidavits from his family members.  Habeas relief is not permitted with respect to a claim adjudicated on the merits, with respect to a factual dispute, unless the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). State court findings of fact are presumed to be correct

unless the petitioner rebuts that presumption by clear and convincing evidence. § 2254(e)(1). The assessment is based on the record that was before the state court. Holland v. Jackson, 124 S.Ct. 2736 (2004). And the presumption applies "even if the hearing was a 'paper' hearing and may not have been full and fair." Morrow v. Dretke, 367 F.3d 309, 315 (5th Cir.2004). See also Valdez v. Cockrell, 274 F.3d 941, 948 (5th Cir.2001)("a full and fair hearing [in state court] is not a prerequisite to the application of AEDPA's deferential framework").

In Valdez, the Fifth Circuit deferred to the state habeas factual findings even where exhibits were lost and thus ignored by the state court, and the state court judge said he had "never read the record of the trial" and "did not intend to" as he did not "have the time." Despite those shortcomings in the state proceedings, the Court found that deference was owed unless the findings were rebutted by clear and convincing evidence to the contrary. The affidavits from two family members are Petitioner's only evidence.  They are no more inherently persuasive than the competing affidavit from defense counsel, and they are somewhat suspect because there is no known basis under Louisiana law by which the attorney might have believed Petitioner would have been eligible for parole after 7 to 12 years. There is also Petitioner's statement at his plea that no promises were made other than what was said in court.

The state court had an evidentiary hearing. It made findings of fact that may face some competing evidence, but the findings are not rebutted by clear and convincing evidence. Accordingly, habeas relief is not available on this claim.

Petitioner also argues that the judge did not advise him of the 10-year minimum sentence for manslaughter.  He argues that F. R. Cr. P. 11 requires such information at federal guilty pleas, but the Federal Rules of Criminal Procedure are not of constitutional dimension and not binding on the states.  Petitioner could prevail on this claim only if the state court's adjudication of the issue was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

A plea might be involuntary under Boykin v. Alabama, 89 S.Ct. 1709 (1969) if a defendant is not advised of the permissible range of sentences.  But a trial court's failure to give this information does not invariably lead to constitutional error.  This information can be provided to the defendant by defense counsel, a bondsman, or other source, and the plea will be voluntary.  See Burton v. Terrell, 576 F.3d 268, 271-72 (5th Cir. 2009).

The minimum sentence, in the context of this agreed-sentence guilty plea, was irrelevant to the voluntariness of the plea.  The record is clear that Petitioner knew he would receive a 40-year sentence if he entered a guilty plea.  It appears that what Petitioner is really arguing is that if he had known that he might receive as little as a 10-year sentence if convicted by the jury of manslaughter, he would have not pleaded guilty and would have gone to trial.  He only implies as much, and the only evidence in the record is to the contrary. Defense counsel testified that she explained to Petitioner the various potential sentences if he were convicted of second degree murder or manslaughter, including a minimum 20-year sentence if convicted of manslaughter and multi-billed as a habitual offender.  To the extent

Petitioner is attempting to make such an argument, it was denied by the state courts, and that decision was neither an unreasonable application of any clearly established Supreme Court precedent nor based on factual findings that have been rebutted by clear and convincing evidence.  Accordingly, habeas relief is not permitted.

**Notice of Right to Appeal**

Judge Garrett asked Petitioner, during the plea colloquy, if he understood that "you cannot appeal or seek review of the sentence that has been imposed as part of a plea bargain agreement and a sentence, which is an agreed upon sentence?"  Petitioner answered affirmatively.  There was no other mention of the ability to appeal.

Petitioner argues that he had a constitutional right to be informed of his right to appeal.  Petitioner's first post-conviction application urged that defense counsel had failed to file an appeal and requested the court allow an out-of-time appeal.  Judge Crichton denied the request, with an observation that the "record indicates that the defendant was notified at sentencing of his right to appeal."  Tr. 215.  That, however, was not correct.  Petitioner took a different approach in his second post-conviction application.  He pointed out that Judge Garrett did not tell him at his guilty plea of the right to appeal.  Petitioner then argued that "had he known if he went to trial and was convicted, he had the right to appeal, he would have appealed.  He would not have pled guilty!"  Tr. 237.  This argument was not specifically addressed by the state courts.  Petitioner takes yet another approach in his federal petition; he complains that he was "not allowed to appeal his sentence, nor his invalid plea agreement."

Petitioner's presentation of one theory to the state court and another to the federal court means he may not have exhausted his state court remedies with regard to the theory he presents to this court.  See Ogan v. Cockrell, 297 F.3d 349, 358 (5th Cir. 2002) (claim not exhausted when prisoner relied on a different legal theory than he did in state court).  But the state has conceded in paragraph one of its answer that Petitioner exhausted his state court remedies, which appears to be a valid waiver under 28 U.S.C. § 2254(b)(3).

The claim presented to this court is that the state court violated a constitutional right to be informed of the right to appeal.  Federal Rule of Criminal Procedure 32 now requires a federal court to advise the defendant of any right to appeal the sentence, but there was a time when Rule 32 provided that there was no duty on the court to advise the defendant of any right to appeal after sentence was imposed following a plea of guilty.  See U.S. v. Weatherford, 1994 WL 93639 *4 (5th Cir. 1994) See also Davis v. Wainwright, 462 F.2d 1354 (5th Cir. 1972).  Presumably, the many pleas accepted during that era were not unconstitutional.

Petitioner has not cited any authority for the proposition that the constitution required the judge who accepted the plea to advise him of a right to appeal.  Also, it should be understood that Judge Garrett did not tell Petitioner he could not appeal, only that he could not appeal his agreed sentence.  That was a correct statement of law.  See La. C. Cr. P. art. 881.2(a)(2).  There is no basis for relief with respect to this claim.

**No State Evidentiary Hearing**

Petitioner argues that his constitutional rights were violated when the state court did not hold an evidentiary hearing on his post-conviction application.  The state appellate court, citing Louisiana procedural law, held that the application could be adjudicated based on the writ record and other supporting documents, so no evidentiary hearing was necessary.  Tr. 309.

This claim fails because "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001). The federal court does not sit to supervise the state court's proper application of state post-conviction procedural law.  Taylor v. Cain, 2010 WL 6620876 *12 (W.D. La. 2010).

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**.


## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 6th day of September, 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE